**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY,**

       **Petitioner,**

**v.**                         **CIVIL ACTION NO. 2:20-CV-36
(KLEEH)**

**APPALACHIAN AGGREGATES, LLC,**

       **Respondent.**

---

**MEMORANDUM OPINION AND ORDER**

---

On November 30, 2021, Petitioner Erie Insurance Property and Casualty Company ("Erie") filed *Erie's Motion for Summary Judgment* [ECF No. 23] seeking a declaration from this Court that it is not required to defend or indemnify Respondent Appalachian Aggregates, LLC, ("Appalachian") under the three (3) Erie policies issued to Hardman Trucking, Inc., ("Hardman"). These policies relate to the Underlying Lawsuit filed in the Circuit Court of Kanawha County, West Virginia, in which Appalachian is a defendant. For the reasons stated herein, the Court **GRANTS** Erie's Motion for Summary Judgment [ECF No. 23], **DENIES** Appalachian Aggregates, LLC's, Motion for Summary Judgment [ECF No. 21], and **DECLARES** that Erie has no duty to defend or indemnify Appalachian in the underlying state court litigation.

Erie v. Appalachian                                    2:20cv36

<u>MEMORANDUM OPINION AND ORDER</u>

I.   <u>PROCEDURAL HISTORY</u>

Petitioner Erie Insurance Property and Casualty Company ("Petitioner" or "Erie") filed a petition for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, against Appalachian Aggregates, LLC ("Respondent" or "Appalachian") on August 25, 2020. ECF No. 1. On or about September 17, 2020, Respondent accepted service of the petition. ECF No. 3. On September 25, 2020, Appalachian filed an answer to the petition for declaratory judgment and asserted a counter-petition for declaratory judgment. ECF No. 4. Erie answered the counter-petition on October 15, 2020. ECF No. 7.

This Court entered a First Order and Notice on January 4, 2021. ECF No. 11. A scheduling order was entered on March 5, 2021, (after the parties submitted their Report of Rule 26 Planning Meeting on February 12, 2021), and discovery ensued. ECF Nos. 7, 8. Appalachian filed a Motion for Summary Judgment [ECF No. 21] on November 29, 2021, to which Erie responded in opposition on December 20, 2021. ECF No. 28. Appalachian replied on January 3, 2022. ECF No. 29.  Erie moved for summary judgment [ECF No. 23] on November 30, 2021, which is the subject of this Memorandum Opinion and Order. Appalachian responded in opposition on December 14, 2021 [ECF No. 27]. Erie replied on January 4, 2022 [ECF No. 30], making the motion ripe for decision.

2

MEMORANDUM OPINION AND ORDER

## II.  <u>FACTS</u>

Erie is a Pennsylvania corporation engaged in business in the State of West Virginia, and is likewise licensed to issue policies in this state. ECF No. 1, Pet., ¶ 1. Appalachian is a limited liability company organized under the laws of Delaware, with a principal place of business in Dunbar, Kanawha County, West Virginia. <u>Id.</u> ¶ 2. Erie alleges diversity jurisdiction under 28 U.S.C. § 1332, and proper venue pursuant to 28 U.S.C. § 1391, to which there is no opposition presented by Appalachian. <u>Id.</u> ¶¶ 3-4. Appalachian owns and operates the Kelly Mountain Quarry near Elkins, West Virginia, in which Appalachian engages in producing, selling, and delivering stone products throughout West Virginia. <u>Id.</u> ¶¶ 5-6. Appalachian loads various stone products into dump trucks, and the dump trucks transport the products to customers. <u>Id.</u> ¶ 7.

Erie requests the Court declare that, based on the language in the Erie Auto Policy, Erie BCL Policy, and Erie CGL Policy, that Erie has no duty to defendant or indemnify Appalachian for the claims asserted against it in the Underlying Lawsuit. <u>Id.</u> ¶ 1-4, Pet. 25.

### a. The Underlying Lawsuit

On January 31, 2020, Plaintiff Carol Sue Huffman ("Huffman") filed a complaint against Defendants Appalachian, Flanigan Field

**Erie v. Appalachian**                                              **2:20cv36**

MEMORANDUM OPINION AND ORDER

Services, LLC, ("Flanigan") and Charles W. Beckner ("Beckner") in the Circuit Court of Kanawha County, West Virginia, Civil Action No. 20-C-112. ECF No. 1, Pet., ¶¶ 8-12. Therein, Huffman alleges on or about October 2, 2019, she was traveling southbound on Route 20 in Upshur County, West Virginia, when she passed a dump truck, and a stone fell off the back of the dump truck and flew through her windshield, striking and injuring Huffman. Id. ¶¶ 8-12. Huffman alleges Beckner was driving the dump truck and that the dump truck was owned by Flanigan. Id. ¶ 10. Huffman asserts a claim of negligence against Appalachian, Flanigan, and Beckner for failing to properly load the stones to the back of the dump truck. Id. ¶¶ 15-17. Huffman also brought a claim of vicarious liability against Flanigan. Id.

Appalachian filed a third-party complaint in which it brings in Hardman Trucking as the dump truck owner and operator agent. Id. ¶ 18. The third-party complaint alleges the drivers, Charles Beckner and Roger Wiss, failed to properly load the trucks by covering the stones with tarp, and asserts negligence claims against both Beckner and Wiss. Id. ¶ 19. It also alleges that two dump trucks had picked up Gabion Stones from the Kelly Mountain Quarry, but these Gabion Stones were not being transported at the request of Appalachian nor did it arise out of the Hardman Contract that existed between Hardman and Appalachian. Id. ¶¶ 20, 28.

MEMORANDUM OPINION AND ORDER

Appalachian asserts breach of contract against Hardman, implied indemnity from Hardman and Wiss, and contribution from Hardman and Wiss in its third-party complaint. Id. ¶¶ 24-25. Finally, Appalachian brings an express indemnity claim based on a contract between Hardman and Appalachian. Id. ¶ 26.

Wiss, Hardman, Flanigan, and Beckner reached a good-faith settlement with Erie for $8,000,000.00. ECF No. 23-11, Circuit Ct. Summ. J. Order, ¶ 7. The Circuit Court of Kanawha County found that the "incident of a rock hitting Ms. Huffman did not arise out of the written contract between Hardman and Appalachian. There was never any contract between Flanigan and Appalachian for the time relative to the Plaintiff's Complaint." Id. ¶ 8. At the time of the incident, Hardman was hauling for a separate Hardman customer and not for Appalachian. Id. ¶ 9. The Court found that Hardman and Flanigan's hauling of stone was outside the scope of the Trucking Agreement, and therefore Appalachian's third-party breach of contract and express indemnity claims fail. Id. ¶¶ 10, 17, 25.

On October 2, 2019, Beckner, Flanigan's employee, drove the dump truck to Kelly Mountain Quarry to pick up stone at the direction of Hardman. (ECF No. 21-1, Beckner Dep., 41:13-44:16.) Beckner described the process of picking up the stone, entering the quarry, weighing in at the inbound scale, and driving to the rock pile to the front-end loader, and weighing in at the outbound

scale, where he received his weight ticket. (Id. 45:2-53:15).
Beckner testified that the stone was loaded by a front-end loader.
(Id. 47:1-48: 5). Wiss, a second dump truck driver, was also
getting a load of stone for Hardman. (Id. 146:1-147:22). While
Beckner waited for Wiss, Beckner checked the load of stone that
had just been placed in the bed of the Flanigan dump truck and
rearranged some of the stones. (Id. 70:3-71:22, 85:1-21, 87:17-
88:6).

### b. Relevant Policy Language

Three Erie Insurance Property and Casualty Company policies
are attached to the Petition for Declaratory Judgment: (1)
Commercial Auto Insurance Policy, Policy No. Q10-7840008, policy
period October 28, 2018, to October 28, 2019 ("Erie Auto Policy");
(2) Business Catastrophe Liability Policy, Policy No. Q34-7870028,
policy period October 28, 2018, to October 28, 2019 ("Erie BCL
Policy"); and (3) Ultraflex Policy, a Commercial General Liability
coverage, Policy No. Q46-7850079, policy period October 28, 2018,
to October 28, 2019 ("Erie GCL Policy"). ECF No. 1, Pet., ¶¶ 29-
31.  By a series of letters dated August 4, 2020, Erie agreed to
defend Appalachian in the Underlying Suit through the Erie Auto
Policy, under a reservation of rights. Id. ¶¶ 34-36. Erie advised
it would monitor the suit and that it may be required to respond
to the demand for coverage in assessing the Erie BCL Policy, and

**Erie v. Appalachian**                                    **2:20cv36**

<u>MEMORANDUM OPINION AND ORDER</u>

eventually advised Appalachian there was no coverage through the Erie CGL Policy. <u>Id.</u> ¶¶ 34-36.

**1. The Erie Auto Policy[1]**

Erie issued a commercial auto insurance policy to Hardman. The dump truck involved in the October 2, 2019, accident, was a 2012 Kenworth Dump Truck owned by Flanigan Field Services, LLC, with a VIN of 1NKDX4TXXCJ334949. ECF No. 1, Pet., ¶ 38. The dump truck was not a listed vehicle on the Declarations of the Erie Auto Policy issued to Hardman. <u>Id.</u> Liability coverage is as follows:

> **LIABILITY PROTECTION**
> **OUR PROMISE**
>
> **Bodily Injury Liability**
>
> **Property Damage Liability**
>
> **We** will pay all sums **anyone we protect** legally must pay as damages caused by an **accident** covered by this policy. The **accident** must arise out of the ownership, maintenance, use, loading or unloading of an **auto we insure.**
>
> Damages must involve:
>
> 1. bodily injury, meaning physical harm, sickness, or disease including care, loss of services or resultant death; or

---

[1] The Court cites excerpts of the Erie Auto Policy identified as Exhibit 3 to the Petition for Declaratory Judgment, ECF No. 1-3.

MEMORANDUM OPINION AND ORDER

2. property damage, meaning damage to or loss of
   use of tangible property.

ECF No. 1-3 at 15. "Anyone we protect" is defined in the Liability

Protection Section:

### PERSONS WE PROTECT

The term **"anyone we protect"** means any person
or organization listed below:

1. **You**, for any **auto we insure.**

2. Anyone else while using an **auto we insure** with
   **your** permission, except:

a. the owner or anyone else from whom **you** borrow
   or hire an **auto we insure.** (This does not apply
   to a non-owned **trailer** connected to an **owned
   auto.**)

b. **your** employee if the auto we insure is owned
   by that employee or a member of the employee's
   household;

c. anyone who uses an **auto we insure** in a business
   that sells, repairs, services or parks **autos**,
   unless the business is **yours**;

d. anyone other than **your** employees, partners, a
   borrower or lessee or any of their employees,
   while loading or unloading an **auto we insure**;

e. **your** partner while using an **auto** owned by that
   partner or a member of his or her household
   and not described on the **Declarations** or an
   **auto** that does not replace one so described.

**Erie v. Appalachian**                                    **2:20cv36**

MEMORANDUM OPINION AND ORDER

ECF No. 1-3 at 15. Erie points out the following definitions in its motion:

**DEFINITIONS**

*Throughout* **your** *policy and its endorsement forms, the following words have a special meaning when they appear in bold type:*

- **"accident"** includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage.

\* \* \* \*

**ADDITIONAL ERIE INSURANCE COMPANY AND ERIE INSURANCE PROPERTY AND CASUALTY COMPANY DEFINITIONS**

*The following words have a special meaning in policies issued by the Erie Insurance Company and Erie Insurance Property and Casualty Company when they appear in bold type:*

. . .

**"you"**, **"your"** and **"Named Insured"** means the person(s) or organization(s) named in Item **1** on the **Declarations**. Except in the **RIGHTS AND DUTIES - GENERAL POLICY CONDITIONS** Section, these words include **your** spouse if a resident of the same household.

ECF No. 1-3 at 14. Erie maintains that coverage extends to "anyone we protect for bodily injury or property damage caused by an accident arising out of the ownership, maintenance, use, loading or unloading of an auto we insure." ECF No. 1, ¶ 42. The claim in

the Underlying Suit against Appalachian is based on Appalachian's alleged negligence in loading stones onto the dump truck owned by Flanigan. Id. ¶ 43. Appalachian, not being an employee, partner, borrower, or lessee of Hardman with respect to the Erie Auto Policy, does not qualify as "anyone we protect" under the policy, even in the event that the truck at issue qualifies as an "auto we insure." Id. ¶¶ 45-47.

Of course, the Erie Auto Policy includes exclusions applicable here:

### LIMITATIONS ON OUR DUTY TO PAY

**What We Do Not Cover-Exclusions**

**We** do not cover:

. . . .

7. bodily injury or property damage that results from the handling of property:

   a. before it is moved from the place where it is accepted by **anyone we protect** for loading into or onto an **auto we insure**; or

   b. after it is unloaded from an **auto we insure** to the place it is finally delivered by **anyone we protect**.

. . . .

13. bodily injury or property damage that results from the handling, use or condition of any product made, sold or distributed by **anyone we protect** if the accident

MEMORANDUM OPINION AND ORDER

    happens after **anyone we protect** has given up possession
of the product.

ECF No. 1-3 at 16-17. Bodily injury resulting from handling of
property before it is moved and accepted by "anyone we protect"
before loading into or onto an "auto we insure" is excluded from
coverage. ECF No. 1, ¶ 49. Erie maintains these claims are excluded
under the Erie Auto Policy, and Appalachian is not entitled to
coverage under the policy. Id. ¶¶ 49-54.

    Finally, an "additional insured" is covered under the Erie
Auto Policy:

<b>ADDITIONAL INSURED ENDORSEMENT</b>

<b>DEFINITIONS</b>

    **"Additional Insured"** means the person or
organization shown on the **"Declarations"** as an
"ADDITIONAL INSURED."

**OUR PROMISE**

    Under Liability Protection, **"we"** will pay all
sums the **"Additional Insured"** legally must pay
as damages arising out of the acts or
omissions of:

1. the **"Named Insured"** or any **"relative;"**

2. any employee or agent of the **"Named Insured;"**
or

3. any other person, except the **"Additional
Insured"** or any employee or agent of the
**"Additional Insured"**

    using an **"auto we insure"** with the **"Named
Insured's"** permission.

11

MEMORANDUM OPINION AND ORDER

Exhibit 5 to Motion, Additional Insured Endorsement, ECF No. 23-5 at 41.

### III. **STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317-18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

This Court has previously summarized the burden imposed on parties opposing a summary judgment challenge.

> However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported

MEMORANDUM OPINION AND ORDER

motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

Watson v. Warden, FCI Hazelton, No. 2:16-CV-76, 2017 WL 1955532, at *2 (N.D.W. Va. May 11, 2017) (Bailey, J.). The Court views the

MEMORANDUM OPINION AND ORDER

evidence in the light most favorable to Defendant, the non-moving party, and draws any reasonable inferences in Plaintiff's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

**IV.  APPLICABLE LAW**

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. In the Fourth Circuit, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation omitted)).

Here, because the entry of a declaratory judgment will resolve the parties' dispute, the Court's exercise of jurisdiction over this matter is proper. Pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), the applicable law in a diversity case is determined by the substantive law of the state in which a district

court sits.[2] The parties agree that the substantive law of West Virginia governs the interpretation and application of the insurance policy at issue.

### V.   **ANALYSIS**

Erie requests both declaratory judgment and summary judgment against Appalachian. Appalachian seeks coverage under policies of insurance that were issued to Hardman, including a Commercial Auto Policy, a Commercial General Liability Policy, and a Business Catastrophe Liability Policy, which is an excess policy over and above the Commercial Auto Policy and Commercial General Liability Policy. Erie asks the Court to declare that it has no duty to defend or indemnify Appalachian.

#### a. Declaratory Judgment

Under West Virginia law, liability insurance policies establish two main duties on the part of the insurer, the duty to defend and the duty to indemnify. See, e.g., Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W. Va. 1986); Donnelly v. Transportation Insurance Co., 589 F.2d 761, 765 (4th Cir. 1978). As a general rule, an insurer's duty to defend is triggered when "the allegations in the plaintiff's complaint are reasonably

---

[2]  It is undisputed that the parties are diverse and more than $75,000.00 is in controversy. Thus, the Court has subject matter jurisdiction over this matter. See 28 U.S.C. § 1332.

**MEMORANDUM OPINION AND ORDER**

susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." <u>Pitrolo</u>, 342 S.E.2d at 160; <u>see also</u> Syl. Pt. 2, <u>Farmers & Mechanics Mut. Ins. Co. of W. Va. v. Cook</u>, 557 S.E.2d 801, 802 (W. Va. 2001). If any of the claims against the insured might trigger coverage, the insurer must defend against all the claims asserted. <u>See</u> <u>Horace Mann Ins. Co. v. Leeber</u>, 376 S.E.2d 581, 584 (W. Va. 1988) (citing <u>Donnelly</u>, 589 F.2d at 765). Nevertheless, the insurer need not provide a defense if the claims against the insured are "entirely foreign to the risk insured against." <u>Air Force Ass'n v. Phoenix Ins. Co.</u>, 1990 WL 12677, at *2 (4th Cir. 1990) (citing <u>Donnelly</u>, 589 F.2d at 765).

The specific wording of an insurance policy determines whether it provides coverage for a particular claim. <u>See</u> <u>Beckley Mechanical, Inc. v. Erie Ins. Prop. & Cas. Co.</u>, 374 F. App'x 381, 383 (4th Cir. 2010); <u>Cherrington v. Erie Ins. Prop. and Cas. Co.</u>, 745 S.E.2d 508, 524 (W. Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, <u>Cherrington</u>, 745 S.E.2d 508 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. <u>Id.</u> Instead, courts must give terms and provisions their meaning in the "plain, ordinary and popular sense, not in a strained or philosophical

Erie v. Appalachian                                          2:20cv36

MEMORANDUM OPINION AND ORDER

sense." <u>Polan v. Travelers Ins. Co.</u>, 192 S.E.2d 481, 484 (W. Va. 1972); <u>see also</u> Syl. Pt. 9, <u>Cherrington</u>, 745 S.E.2d 508.

Here, Erie contends that, under the plain and unambiguous terms of its policies, it is not required to defend or indemnify Appalachian because (1) Appalachian does not qualify as "anyone we protect" under the Erie Auto Policy, (2) the actions of Appalachian in loading stone onto the Flanigan dump truck are excluded under the "limitations on our duty to pay" exclusion in the Erie Auto Policy, (3) Appalachian's status as an additional insured under the endorsement in the Erie Auto Policy is not triggered by the event on October 2, 2019, (4) Appalachian is not the named insured and does not otherwise fall within the Erie CGL Policy's definition of "who is an insured," and (5) Appalachian is not covered by the Erie BCL Policy because it does not provide liability coverage broader than the Erie Auto Policy. The Court will address each claim in turn.

> **1. Appalachian does not qualify as "anyone we protect" under the Erie Auto Policy; therefore, Appalachian is precluded from coverage under the Erie Auto Policy.**

To determine whether Appalachian qualifies as "anyone we protect" under the Erie Auto Policy issued to Hardman, the Court begins with the relevant text of the policy:

**LIABILITY PROTECTION**
**PERSONS WE PROTECT**

**MEMORANDUM OPINION AND ORDER**

---

The term **"anyone we protect"** means any person or organization listed below:

1. **You,** for any **auto we insure.**

2. Anyone else while using an **auto we insure** with **your** permission, except:

   a. the owner or anyone else from whom **you** borrow or hire an **auto we insure.** (This does not apply to a non-owned **trailer** connected to an **owned auto.**)

   b. **your** employee if the auto we insure is owned by that employee or a member of the employee's household;

   c. anyone who uses an **auto we insure** in a business that sells, repairs, services or parks **autos,** unless the business is **yours;**

   d. anyone other than **your** employees, partners, a borrower or lessee or any of their employees, while loading or unloading an **auto we insure;**

   e. **your** partner while using an **auto** owned by that partner or a member of his or her household and not described on the **Declarations** or an **auto** that does not replace one so described.

ECF No. 1-3 at 15.

> **i. Appalachian does not qualify as "you" under "persons we protect."**

The Erie Auto Policy defines "you", "your", and "Named Insured" as the "Subscribers and others named in Item 1 on the

**MEMORANDUM OPINION AND ORDER**

Declarations." ECF No. 1-3 at 14. Item 1 of the Declarations identifies the Named Insured as "Hardman Trucking, Inc." ECF No. 1-3 at 2, Declarations. Accordingly, Appalachian does not qualify as "you" under "persons we protect."

### ii. Appalachian does not qualify as "[a]nyone else while using an auto we insure."

Second, the motor vehicle accident subject of the Underlying Suit did not occur while Appalachian was using an "auto [Erie] insure[s]"; therefore, "[a]nyone else while using an auto we insure", also does not cover Appalachian. "[W]hile using" is the time period imposed on coverage of anyone other than the named insured. The Supreme Court of Appeals has established a 4-part test which is an "instructive guide[] for finders of facts to follow in evaluating whether an injury arose from the 'use' of a motor vehicle, and no one factor carries more weight than the others":

> [T]he court must determine whether there is a causal connection between the motor vehicle and the injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

MEMORANDUM OPINION AND ORDER

Syl. Pt. 2, <u>Cleaver v. Big Arm Bar & Grill, Inc.</u>, 502 S.E.2d 438, 438-39, 443 (W. Va. 1998). <u>Cleaver</u> involved a collision between Pedestrian and Driver of a moving vehicle on a state route. <u>Id.</u> The Pedestrian exited his own vehicle and while crossing Route 45 on foot, he collided with the vehicle driven by Driver. <u>Id.</u> at 439. There was a passenger in Driver's car, and as a result of the crash, both the Pedestrian and passenger perished. <u>Id.</u> Passenger filed a wrongful death suit against the Pedestrian and Driver. <u>Id.</u> "Under the terms of the Erie automobile liability policy, coverage exists *only* if [the passenger's] death is determined to have arisen out of the use of the [Pedestrian's] vehicle." <u>Id.</u> at 440 (emphasis in original). The Court found that "[u]pon parking his car and exiting the vehicle, [Pedestrian] had fulfilled the purpose for which he was utilizing his car" under the policy, and "conclude[d] that the [Pedestrian's] vehicle was not in 'use' at the time of the accident." <u>Id.</u> at 442.

Appalachian was not "using" the Flanigan dump truck under the plain and unambiguous terms of Erie's policy at the time of the motor vehicle accident. Syl. Pt. 2, <u>Cleaver</u>, 502 S.E.2d 438. First, Appalachian was not "in reasonably close proximity to the [Flanigan dump truck] at the time of the accident." <u>Id.</u> Second, Appalachian was not "oriented" toward the dump truck. <u>Id.</u> Third, Appalachian "had relinquished control of the vehicle" when the accident

MEMORANDUM OPINION AND ORDER

occurred. Id. Fourth, Appalachian "was [not] engaged in a transaction reasonably related to the use of the vehicle at the time of the accident." Id. The claim in the Underlying Suit against Appalachian is based on Appalachian's alleged breach of duty in loading stones onto the dump truck owned by Flanigan. When the crash between Plaintiff Huffman and Beckner occurred, Appalachian's interaction with the dump truck – the loading - had ceased. Because Appalachian does not qualify as "anyone we protect" once it was no longer loading the Flanigan dump truck, and Appalachian was not using the dump truck when the incident triggering liability occurred, Appalachian is precluded from coverage under the Erie Auto Policy.

Appalachian unsuccessfully argues that the use of the term "while" with "using" renders the Erie policy ambiguous when viewing the policy insuring agreement and the exclusionary language together. ECF No. 27. The insuring provision for liability coverage is in accordance with the Liability Protection Section of the Commercial Auto Policy coverage form and states, in part:

**LIABILITY PROTECTION**

**OUR PROMISE**

**Bodily Injury Liability**
**Property Damage Liability**

**We** will pay all sums **anyone we protect** legally must pay as damages caused by an **accident**

> covered by this policy. The **accident** must
> arise out of the ownership, maintenance, use,
> loading or unloading of an **auto we insure.**

Erie Auto Policy, ECF No. 1-3 at 15. Appalachian cites to West Virginia Code § 33-6-31(a) stating that Erie is required to provide broad liability coverage and has failed, and that the "arise out of" language in the Bodily Injury Liability Property Damage Liability section contravenes the "while using" language contained in Persons We Protect section. However, the policy is unambiguous here. Because Appalachian was not "using" the auto while the incident triggering liability occurred, Appalachian is not covered by the policy.

### iii. Appalachian does not qualify as "anyone other than your employees, a partner, a borrower or lessee or any of their employees, while loading or unloading an auto we insure."

Under the Erie Auto Policy, "anyone we protect" does not include anyone other than Hardman, as the named insured, or its employees, partners, borrowers, or lessees of its employees for liability arising out of the loading or unloading of an insured vehicle. Erie Auto Policy, ECF No. 1-3. It is undisputed that Appalachian is not an "employee, partner, borrower or lessee" of Hardman. ECF No. 4, ¶¶ 45, 65.  Therefore, Appalachian is not entitled to coverage under the Erie Auto Policy "while loading or unloading" an auto Erie insures.

MEMORANDUM OPINION AND ORDER

**2. The Erie Auto Policy excludes Appalachian's act of loading the Gabian stone onto the Flanigan dump truck under the "limitations on our duty to pay" exclusion.**

Alternatively, Erie disputes coverage for Appalachian's action of loading the stone onto the dump truck under the "limitations on our duty to pay" exclusion in the Erie Auto Policy. The Erie Auto Policy contains the relevant exclusion:

**LIMITATIONS ON OUR DUTY TO PAY**

**What We Do Not Cover-Exclusions**

**We** do not cover:

. . . .

7. bodily injury or property damage that results from the handling of property:

c. before it is moved from the place where it is accepted by **anyone we protect** for loading into or onto an **auto we insure**; or

d. after it is unloaded from an **auto we insure** to the place it is finally delivered by **anyone we protect.**

. . . .

13. bodily injury or property damage that results from the handling, use or condition of any product made, sold or distributed by **anyone we protect** if the accident happens after **anyone we protect** has given up possession of the product.

MEMORANDUM OPINION AND ORDER

Erie Auto Policy, ECF No. 1-3 at 16-17. Bodily injury resulting from handling of property - which is what the allegations are in the Underlying Suit - before it is moved and accepted by "anyone we protect for loading into or onto an auto we insure" is excluded from coverage. Id. Even if Appalachian qualified as "anyone we protect", the Erie Auto Policy would still exclude coverage by operation of another, separate exclusion.

Here, Exclusion 7 applies: The actions of Appalachian in loading stone onto the Flanigan dump truck occurred at its facility and before the stone was moved from the place where it was accepted by Flanigan. Appalachian is precluded from coverage under Exclusion 7. Exclusion 13 also applies. The Underlying Suit brings claims against Appalachian for "bodily injury . . . that results from the handling" of the Gabian stones after Appalachian had "given up possession of the product." Appalachian is barred from coverage pursuant to Exclusions 7 and 13.

### 3. Appalachian's status as an additional insured under the endorsement in the Erie Auto Policy is not triggered by the event on October 2, 2019.

The Erie Auto Policy contains the following endorsement as to Appalachian's status as an additional insured:

ADDITIONAL INSURED ENDORSEMENT

DEFINITIONS

24

MEMORANDUM OPINION AND ORDER

> **"Additional Insured"** means the person or organization shown on the **"Declarations"** as an "ADDITIONAL INSURED."
>
> **OUR PROMISE**
>
> Under Liability Protection, **"we"** will pay all sums the **"Additional Insured"** legally must pay as damages arising out of the acts or omissions of:
>
> 1. the **"Named Insured"** or any **"relative;"**
>
> 2. any employee or agent of the **"Named Insured;"** or
>
> 3. any other person, except the **"Additional Insured"** or any employee or agent of the **"Additional Insured"**
>
> using an **"auto we insure"** with the **"Named Insured's"** permission.

Exhibit 5 to Motion, Additional Insured Endorsement, ECF No. 23-5 at 41.

Appalachian briefly argues estoppel against Erie because Erie failed to include the Additional Insured Endorsement in its reservation of rights. Substantively, Appalachian argues the Additional Insured Endorsement controls and provides coverage for Appalachian because "where an endorsement conflicts with the main policy, the endorsement controls." Allied World Surplus Lines Ins. Co. v. Day Surgery Ltd. Liab. Co., 451 F.Supp.3d. 577 (S.D.W. Va. 2020) (internal citation and quotation marks omitted). It further requests this Court declare the policy ambiguous due to these "conflicting provisions."

Erie v. Appalachian                                          2:20cv36

MEMORANDUM OPINION AND ORDER

There is no ambiguity here. The Additional Insured Endorsement extends liability coverage for an additional insured when the additional insured must pay damages arising out of the acts of the Named Insured (Hardman) or any other person other than the Additional Insured (Appalachian). However, the Underlying Suit is based on a negligence claim asserted against Appalachian for its alleged breach of a duty to safely and properly load the dump trucks carrying the stone products from the quarry to the contracted destination. These allegations are based on acts and omissions by Appalachian itself, which is explicitly precluded by the Additional Insured Endorsement.

It is a "well-established proposition that the rights of additional insureds are limited by the terms and conditions of [the insurance policy]." Nautilus Ins. Co. v. Johnny Clark Trucking, LLC, No. 2:12-cv-06678, 2014 WL 1365836, *1, *10 (S.D. W. Va. Mar. 20, 2014) (internal citation and quotation marks omitted). Accordingly, because the Court finds that the claims asserted by Plaintiff Huffman against Appalachian are based on Appalachian's own acts or omissions (Count I – Negligence), the Additional Insured Endorsement expressly excludes that claim from the scope of coverage. Because Appalachian does not qualify as "anyone we protect" for purposes of the general insuring provisions

of the policy, <u>see</u> Section V.a.1, it is not entitled to coverage as an additional insured.

### 4. Appalachian is not the named insured and does not otherwise fall within the Erie CGL Policy's definition of "who is an insured."

Because Appalachian is not a Named Insured or an Additional Insured on the Declarations under the Erie GCL Policy, Erie has no duty to defend or indemnify Appalachian under the Erie GCL Policy.

### SECTION II — WHO IS AN INSURED

1. If you are designated in the Declarations as:

                      . . .

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directs. Your stockholders are also insured, but only with respect to their liability as stockholders.

ECF No. 1, Pet., ¶ 63;[3] ECF No. 1-6. Because Hardman is classified as a corporation in the Declarations, Appalachian does not meet any of the qualifiers of "executive officers," "directors," or "stockholders."

While Appalachian asserts that it is entitled to coverage by virtue of an insured contract between Appalachian and Hardman –

---

[3] This paragraph in the Petition should reference ¶ 75.

MEMORANDUM OPINION AND ORDER

the Trucking Agreement - it has already been determined by the Circuit Court of Kanawha County that Appalachian has no express indemnity claim and that the October 2, 2019 motor vehicle accident did not arise out of the contract upon which Appalachian relies. ECF No. 23-11, Circuit Ct. Summ. J. Order, ¶¶ 10, 17, 25.

### 5. Appalachian is not covered by the Erie BCL Policy because it does not provide liability coverage broader than the Erie Auto Policy.

Finally, Hardman's excess policy, the Erie BCL Policy [ECF No. 1-4], provides liability umbrella coverage in excess of the Erie Auto Policy and Erie CGL Policy. The Erie BCL Policy provides coverage no broader than that provided by the underlying insurance. Therefore, Appalachian is likewise excluded from coverage under the Erie BCL Policy.

### VI.  CONCLUSION

For the reasons discussed, the Court concludes that under the plain and unambiguous terms of its policies, Erie is not required to defend or indemnify Appalachian. Accordingly, the Court **GRANTS** Erie's motion for summary judgment [ECF No. 23] and **DECLARES** that it has no duty to defend or indemnify Appalachian on the claims alleged in the Underlying Complaint filed in the Circuit Court of Kanawha County. Appalachian Aggregates, LLC's, Motion for Summary Judgment is **DENIED**. [ECF No. 21]. Appalachian Aggregates, LLC's, Motion for Leave to File Amended Pleading [ECF No. 19] and Motion

**Erie v. Appalachian**                                                      **2:20cv36**

**MEMORANDUM OPINION AND ORDER**

for Expedited Ruling on Previously Filed Motion for Leave to File Amended Pleading [ECF No. 33] are **DENIED**. The Court finds that granting leave to amend would be futile for the reasons discussed herein. Pursuant to Federal Rule of Civil Procedure 54(b), and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment in favor of Erie. This case is **DISMISSED WITH PREJUDICE** and the Court **DIRECTS** the Clerk to **STRIKE** the matter from the Court's active docket.

It is so **ORDERED**.

Pursuant to Rule 54(b), the Court **DIRECTS** the Clerk to enter a separate judgment order. It further **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order and the judgment order to counsel of record.

**DATED:** September 22, 2022

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA